David R. Ongaro (State Bar No. 154698)
dongaro@ongaropc.com
ONGARO PC
50 California Street, Suite 3325
San Francisco, CA  94111
Phone: (415) 433-3900
Fax:    (415) 433-3950

Attorneys for Plaintiff
LIL' MAN IN THE BOAT, INC.,

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LIL' MAN IN THE BOAT, INC., a California Corporation.<br><br>          Plaintiff,<br><br>          vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO PORT COMMISSION, operating under the title PORT OF SAN FRANCISCO, ELAINE FORBES, Interim Executive Director of the San Francisco Port; PETER DALEY, Deputy Director, Maritime, the San Francisco Port; JEFF BAUER, Deputy Director of Real Estate, the San Francisco Port; JOE MONROE, Harbormaster, South Beach Harbor, Pier 40,<br><br>          Defendants. | No.<br><br>**COMPLAINT FOR:**<br><br>1) The Civil Rights Act, 42 U.S.C. § 1983<br>2) The Bane Act, California Civil Code § 52.1<br>3) Declaratory and Injunctive Relief<br>4) Unjust Enrichment<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.      Plaintiff Lil' Man In The Boat, Inc. ("Lil' Man" or "Plaintiff") owns and operates a licensed commercial charter Motor Vessel "Just Dreaming" (the "MV Just Dreaming") that provides transportation and hospitality services on the San Francisco Bay both for locals and visitors from all over the globe. MV Just Dreaming operates from the Port of San Francisco, and by local regulation, must load and unload its passengers at the North Side Dock of Pier 40's South Beach Harbor. Plaintiff brings this action on behalf of itself and all others similarly situated to redress Defendants the City and County of San Francisco and the San Francisco Port Commission (together operating under the title "Port of San Francisco" and hereinafter referred to as "Defendant City"), Elaine Forbes, Peter Daley, Jeff Bauer, and Joe Monroe (collectively referred to as "Defendants") knowing and repeated violations of the United States Constitution as well as federal and California statutory law.

2.      Defendants regulate the Port of San Francisco (the "Port") and exclusively determine commercial landing fees. South Beach Harbor is the hub of San Francisco Bay charter activity for the entire Northern Bay Area, and the ability to load and unload passengers from South Beach Harbor's North Side Dock is critical to the viability of businesses like Plaintiff's. In effect, Defendants have a monopoly on commercial passenger landings within the City and County of San Francisco. Well aware of their power, Defendants impose excessive fees on commercial charter vessels engaged in interstate commerce as a condition of landing at the Port. These fees bear no relationship to costs created or services provided by Defendants to these vessels, and vastly exceed the amount Defendants charge recreational vessels that are not engaged in interstate commerce and use Port services more extensively. Instead of reasonably compensating Defendants for any benefit they provide to commercial vessels, Defendants' fees are intended to, and do in fact, generate a substantial profit for Defendant City.

3.      The framers of the United States Constitution intended the Tonnage and Commerce Clauses to prevent exactly this scenario, which if left unchecked, would cripple interstate commerce. (U.S. Constitution, Article 1, § 10, cl. 3 (the "Tonnage Clause"); U.S. Constitution,

CLASS ACTION COMPLAINT

1  Article 1, § 8, cl. 3 (the "Commerce Clause").)

2      4.      The Tonnage Clause prohibits localities from imposing an assessment, regardless

3  of name or form, that by operation levies a charge for the privilege of entering, trading in, or lying

4  in a port. A "duty of Tonnage," or a fee for the use of a port in the United States, is permissible

5  under the Tonnage Clause only to the extent that: (a) the proceeds of such a duty are used for

6  services rendered to and enjoyed by the vessel, (b) such services enhance the safety and efficiency

7  of interstate commerce, and (c) the duty places only minimal burdens on interstate commerce.

8      5.      Similarly, a port entry fee or charge violates the Commerce Clause if it (i)

9  discriminates against interstate commerce, (ii) is not based upon a fair approximation of use, or

10  (iii) is excessive in relation to the cost to the government of the benefits conferred.

11      6.      The federal Rivers and Harbors Act (as amended, the "Rivers and Harbors Act")

12  codifies these principles, and likewise prohibits taxation, fees, or other charges for carrying

13  passengers or property to, from, in or across navigable waters of the United States in an amount

14  reasonable necessary to maintain the portion of the port facility used for passage. *See* 33 U.S.C. §

15  5(b).

16      7.      Defendants have forced the payment of excessive fees from Plaintiff and others for

17  years, in violation of these federal laws. In 2016, Defendants sought to impose even higher fees by

18  insisting on a written landing rights agreement (the "2016 Landing Agreement") between

19  Defendant City and all commercial charter operators like Plaintiff who wished to land at the Port.

20      8.      In addition to raising the standard base excursion landing fee and reserving the

21  right to increase that fee "at any time," the 2016 Landing Agreement insists upon payment of

22  seven percent (7%) of a charter vessel's gross revenues, including the sale of alcoholic beverages

23  (the "7% Gross Revenue Fee"). Plaintiff is informed and believes that Defendants impose the 7%

24  Gross Revenue Fee on its land-based tenants, such as restaurants and bars. Not only does the 7%

25  Gross Revenue Fee make Defendants' landing fees even more excessive, it is illegal under

26  California law governing the licensing and sale of alcohol within the state. Business and

27  Professions Code section 23300 prohibits Defendants from participating in, receiving, or sharing

28

2
CLASS ACTION COMPLAINT

any revenue or profit from alcohol sales within the state. (*See* Attachment 7.) Any person who violates section 23300, whether a licensee or a non-licensee improperly sharing in revenues or profits, is guilty of a criminal misdemeanor. *See* Cal. Bus. & Prof. Code § 23301.

9.    The 2016 Landing Agreement is illegal and coercive in several other respects. Among other things, it seeks a waiver of the vessel operator's right to bring claims against Defendants under the agreement, in violation of the First Amendment right to petition the government for a redress of grievances, and, on information and belief, the agreement itself was required to be and was never authorized or approved by the Bay Conservation and Development Commission ("BCDC"), as required by Defendants' permit to operate South Beach Harbor as issued by BCDC.

10.   At various times in 2016, Defendants threatened that any commercial charter operator refusing to sign the 2016 Landing Rights Agreement would lose all rights to land at the Port for commercial purposes. (*See* Attachment 3.) Plaintiff and others faced the "choice" to either pay Defendants' illegal and potentially limitless fees, or stop doing business in the City and County of San Francisco.

11.   Plaintiff repeatedly met with Defendants throughout 2016 to protest their fees and the 2016 Landing Agreement, providing them with unambiguous legal authority demonstrating the illegality of their conduct. Fearing for their businesses, some commercial vessel operators ceded to Defendants' demands and signed the 2016 Landing Agreement. Others like Plaintiff refused. Defendants would not correct their actions or withdraw their demands, and in October 2016, threatened Plaintiff and others to either sign the 2016 Landing Agreement or cease commercial use of the Port by January 1, 2017.

12.   Plaintiff and others who refused to sign the 2016 Landing Agreement are currently locked out of using South Beach Harbor for commercial purposes and cannot operate their businesses. Other members of the proposed class who did execute the 2016 Landing Agreement can use the Port, but only on condition of paying Defendants' extortionate fees. All members of the proposed class, including Plaintiff, have been forced to pay the 7% Gross Revenue Fee as of

1 | January 2017. Plaintiff has made two such payments, one in January 2017 and one in February
2 | 2017, in connection with charters that had been reserved before Defendants prohibited Plaintiff
3 | from using the Port.

4 |  13.  Plaintiff brings this action on behalf of itself and all others similarly situated to
5 | enjoin Defendants' extortionate activities, declare Defendants' fees and the 2016 Landing
6 | Agreement illegal and unenforceable, and secure the return of all illegal fees paid to Defendants
7 | from four years prior to the filing of this complaint to the date of the trial of this matter.

8 | **JURISDICTION AND VENUE**

9 | 14. This action arises under 42 U.S.C. § 1983 (Civil Rights). This Court has subject matter
10 | jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C.
11 | § 1343(a)(3) (jurisdiction to redress constitutional violations); and 28 U.S.C. § 1367
12 | (supplemental jurisdiction).

13 |  15. Venue is proper in this Court under 28 U.S.C. § 1391(b). Venue is appropriate in this
14 | district pursuant to 28 U.S.C. §1391, because Defendants reside in, are found within, and transact
15 | their affairs within this judicial district.

16 |  16. Venue is also proper in this district because a substantial part of the events giving rise
17 | to the claims occurred in this district. Specifically, Plaintiff has conducted business and/or is being
18 | denied the opportunity to conduct business within this district while engaged in interstate
19 | commerce.

20 |  17. Pursuant to Local Civil Rules 3-2 and 3-5, assignment to this division is proper
21 | because a substantial number of the events or omissions that give rise to the claims asserted by
22 | Plaintiff occurred in the County of San Francisco.

23 | **PARTIES**

24 |  18.  Plaintiff Lil' Man is a California corporation created in 1994. Plaintiff is organized
25 | and exists under the laws of the State of California and is and was at all times mentioned herein
26 | qualified to do business in California. Plaintiff owns and operates MV Just Dreaming, and sues
27 | each of the Defendants listed below for violations of law and claims as set forth herein.

28 |

4

CLASS ACTION COMPLAINT

19.     Defendant the City and County of San Francisco and its Port Commission, an agency of the City and County of San Francisco (collectively, "Defendant City"), was and is, at all times relevant, a public government entity existing by virtue of the laws of the State of California and City of San Francisco.

20.     At all times relevant, Defendant City has operated South Beach Harbor, the Port of San Francisco, the predecessor to the Port, the San Francisco Redevelopment Agency, the remnants of the Hunter's Point Naval Shipyard, docks on the North end of San Francisco, and all of the docks that permit commerce vessels to pick up or drop off commercial passengers.

21.     Individual Defendants Elaine Forbes, Peter Daley, and Jeff Bauer were, at all times relevant to this Complaint, the Interim Executive Director and assistant directors of the Port of San Francisco. Defendant Joe Monroe was, at all times relevant to this Complaint, the harbormaster for South Beach Harbor. Each Individual Defendant was an executive officer of, and a manager for, Defendant City, and acted in his or her capacity as a public official with respect to the violations of federal and state law described herein. In their official capacity, they proposed and enforced the Port's rules and policies, including but not limited to the 2016 Landing Agreement, that are at issue in this Complaint. Forbes, Daley, and Bauer were each an executive officer of and a manager for the Defendant City acting in the capacity of a public official with policy-making authority over South Beach Harbor. Each Individual Defendant seeks to and does deprive and violate Plaintiff's rights, and those of all similarly situated, under the Constitution and laws of the United States by taking funds not properly due to Defendant City by threat, coercion and intimidation. Each Individual Defendant has had sufficient time to realize his or her actions violated the Constitution and the Rivers and Harbors Act. Each Individual Defendant is on notice that his or her conduct is illegal conduct as set forth in the U.S. Court of Appeal decision in *Bridgeport Jefferson Steamboat Co. v. Bridgeport Port Authority*, 567 F.3d 79 (2009), a copy of which was delivered to them along with a letter on July 20, 2016. (*See* Attachment 4.) Despite being on notice and having sufficient time to realize their actions violated the law, Individual Defendants have failed to correct their conduct and continue to act illegally. (*See* Attachment 5

CLASS ACTION COMPLAINT

1 (Oct. 6, 2016 Letter).)

2      22.    Each Defendant was likewise advised in meetings on July 20, 2016, and

3 November 8, 2016, and in writing on numerous occasions, that their conduct also violated

4 California law. However, they refused to comply with the law, and insisted that Plaintiff and all

5 others similarly situated either accede to their demands or cease operations from South Beach

6 Harbor as of January 1, 2017.

7                   **FACTUAL ALLEGATIONS**

8      23.    Since 1994, MV Just Dreaming has been moored with the City and County of San

9 Francisco at South Beach Harbor as a recreational vessel pursuant to a lease agreement between

10 Plaintiff and South Beach Harbor management. Plaintiff's status as a recreational tenant of the

11 City and County of San Francisco is not in issue in this suit.

12      24.    In 2003, Plaintiff obtained a commercial license issued by the United States Coast

13 Guard ("USCG") for operation as a vessel for hire to carry passengers on the navigable waters of

14 the United States, and has at all times since 2003 acted within that license. Like other passenger

15 charter vessels at the South Beach Harbor, Plaintiff provides transportation and hospitality

16 services on the San Francisco Bay for visitors from other states and nations during their stays in

17 San Francisco.

18      25.    MV Just Dreaming hosts parties and receptions, and transports guests to visit local

19 landmarks (like Angel Island or the Golden Gate Bridge) and cities (like Oakland and Sausalito),

20 among other things. In the past three years, Plaintiff has routinely provided services to groups

21 from all over the United States, and from other states and countries such as China, France,

22 Mexico, Russia, Germany, Australia, and Spain. In 2014, 2015, 2016, and 2017, MV Just

23 Dreaming transported passengers in interstate commerce from and to foreign nations and other

24 states of this nation over the navigable waters of San Francisco in numerous separate charters

25 monthly and often weekly, and occasionally on a daily basis.  Hiring this vessel, and most vessels

26 on San Francisco Bay, is seasonal, with few charters in January, February and March, with usage

27 increasing to almost daily use, in August and September. A few examples of MV Just Dreaming

28

carrying passengers in interstate commerce from other states and other nations include:

(a) Numerous citizens of and from main land China who had flown to San Francisco and then boarded MV Just Dreaming transporting them from San Francisco over the navigable waters of San Francisco Bay to Angel Island where they disembarked to view and examine the location of Chinese internments at the Immigration Station on the Island. Later MV Just Dreaming picked them up again and transported them again over the navigable waters of San Francisco Bay back to Pier 40, South Beach Harbor;

(b) Numerous citizens of and from main land China who had flown to San Francisco and then boarded MV Just Dreaming transporting them from San Francisco over the navigable waters of San Francisco Bay to Sausalito where they disembarked to view and examine streets, shops and restaurants of the City of Sausalito.

(c) Numerous citizens of and from main land China who had flown to San Francisco and then MV Just Dreaming transported them from Sausalito after shopping and visiting in that city over the navigable waters of San Francisco Bay to San Francisco, Pier 40, South Beach Harbor;

(d) Numerous citizens of and from the Nation of Mexico, on multiple separate occasions who had flown to San Francisco and then boarded MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay to Sausalito to view and examine the City of Sausalito, then on to the Golden Gate Bridge, and ultimately returning to Pier 40, South Beach Harbor, San Francisco.

(e) Numerous citizens of and from the Nation of Russia, who had flown to San Francisco and then boarded MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay for a wedding and reception on San Francisco Bay and ultimately returning to Pier 40, South Beach Harbor, San Francisco.

(f) Numerous citizens of and from the Nation of France, who had flown to San Francisco to participate in Oracle World, an internet company's annual convention, and

CLASS ACTION COMPLAINT

then boarded MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay for a reception on San Francisco Bay and ultimately returning to Pier 40, South Beach Harbor.

(g) Numerous citizens of and from the Nation of Germany, who flew to San Francisco to participate in an internet company's annual convention, and then boarded MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay where they disembarked for a reception at Sausalito. Later they would return to MV Just Dreaming which transported these passengers returning to Pier 40, South Beach Harbor.

(h) Approximately twenty excursions in two years involving numerous citizens of other states in the nation who flew to San Francisco and attended management training for their company in the Redwood City area, and then took a train to San Francisco where they boarded MV Just Dreaming, which transported them from San Francisco over the navigable waters of San Francisco Bay, usually to the Golden Gate Bridge, for a reception on San Francisco Bay and ultimately returning to Pier 40, South Beach Harbor, San Francisco.

(i) Numerous excursions throughout each year involving numerous citizens of other states involved in the accounting industry who flew to and attended training for their employees in the Bay Area at the conclusion of which they boarded MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay, usually to the Golden Gate Bridge, for a reception on San Francisco Bay and returning to Pier 40, South Beach Harbor.

(j) Multiple excursions involving numerous citizens of other nations, predominantly Australia, who flew to San Francisco and then took other transportation to San Francisco where they boarded MV Just Dreaming, which transported them from San Francisco over the navigable waters of San Francisco Bay, to witness and celebrate their

own teams participation in the "Americas' Cup," and ultimately returning to Pier 40, South Beach Harbor, San Francisco.

(k) Multiple separate excursions involving numerous citizens involved in the banking and finance industry from and of the Nation of Spain who flew to San Francisco and investigated the banking and finance industry in order to set up financial offices, who then boarded MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay, on each occasion disembarking in Sausalito.

(l) Repeated and multiple excursions, on a dozens or more occasions, for numerous citizens of other states, and occasionally other nations who came as family members and friends to San Francisco, boarded MV Just Dreaming, which transported them from San Francisco over the navigable waters of San Francisco Bay, on each occasion to or beyond the Golden Gate Bridge to deposit the remains of loved ones into San Francisco bay waters, spreading the ashes of loved ones at sea, then returning to South Beach Harbor, Pier 40, San Francisco.

(m) Repeated and multiple separate excursions involving numerous citizens of other states, and occasionally other nations who came to San Francisco to participate in and who did participate in sale discussions of goods and services in and outside of the United States, who then boarded MV Just Dreaming, which transported them from San Francisco over the navigable waters of San Francisco Bay, then returning to South Beach Harbor, Pier 40.

(n) Repeated and multiple separate excursions, often weekly, involving numerous citizens of other states, and occasionally other nations who came as family members and friends to San Francisco who then boarded MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay, for the purpose of celebrating a birthday, then returning to South Beach Harbor, Pier 40, San Francisco.

(o) On New Years Eve, December 31, 2016, numerous citizens of and from the Nation of Australia, who had flown to San Francisco to observe and film New Year's Eve

9

fireworks, for use in advertising and documentaries boarded MV Just Dreaming, which transported them from San Francisco over the navigable waters of San Francisco Bay for a viewing of fireworks at midnight, and ultimately returning to Pier 40, South Beach Harbor, San Francisco.

(n) Numerous citizens of and from other nations and states are regularly a party of any passenger group in family and company celebrations where they board MV Just Dreaming which transported them from San Francisco over the navigable waters of San Francisco Bay, and ultimately returning to Pier 40, South Beach Harbor, San Francisco.

26.     The presence of tourists from other states and other nations, and the revenue they produce, are all part of and in furtherance of Plaintiff's participation, and the participation of all other similarly situated charter passenger vessels, in interstate commerce, as that phrase is used in the Constitution of the United States.

27.     Since 2006, Plaintiff has loaded and unloaded its passengers at the North Side Dock of Pier 40's South Beach Harbor pursuant to an agreement with Defendant City. Most charter vessels like Plaintiff that accommodate 500 passengers or less that wish to load and unload passengers within the City and County of San Francisco must do so at the North Side Dock under Defendants' regulations. Defendants operate and regulate the North Side Dock, including by setting all fees and charges associated with charter vessels' excursion landings. In 2013, 2014, and 2015 Defendants' landing fee for commercial vessels such as MV Just Dreaming was $160.00. In 2016, the fee increased to $220 for commercial vessel operators who signed the 2016 Landing Agreement, but remained at the 2015 rate for those who refused to sign the new agreement by virtue of a "grace period" extended by Defendants.

28.     For at least the last four years, Defendants have discriminated against vessels engaged in interstate commerce on the navigable waters of San Francisco Bay by favoring non-interstate commerce recreational vessels that use the same docks. While commercial vessels pay far more than the cost of dock maintenance associated with picking up and dropping off passengers, non-commercial vessels pay little or nothing to Defendants for loading or discharging

1   passengers.

2       29.    For example, Defendants charged MV Just Dreaming $1167 per month for 24-

3   hour per day month long dockage at South Beach Harbor as a recreational vessel, which included

4   water, electrical and security services. As a commercial passenger vessel, Defendants charged MV

5   Just Dreaming $160 for one hour's worth of embarking and debarking passengers (30 minutes

6   allotted for each) at the North Side Dock, with no water, electrical or security services included.

7   That rate would amount to $115,200 per month for 24-hour monthly use by a commercial vessel

8   involved in interstate commerce—about 100 times more than Defendants charged recreational

9   vessels. Currently, if MV Just Dreaming uses the North Side Dock as a recreational vessel for

10  dockage, it is charged $1.25 per foot per day, which amounts to $75 per day. But when acting as a

11  commercial passenger vessel, Defendants charge MV Just Dreaming $160 for an hour of use—

12  which would be $3,840 per day—51 times more than a recreational vessel not involved in

13  interstate commerce.

14      30.    The exorbitant fees Defendants charge charter vessels like MV Just Dreaming for

15  use of the North Side Dock is compounded by the fact that these vessels can only use a small

16  portion of that dock's 640 feet. Concession stands and the permanent mooring of a water taxi and

17  kayak hut reduce the space to 330 feet, which is further diminished by the presence of recreational

18  vessels that Defendants allow to moor for hours and even days. Defendants charge these

19  recreational vessels far less than MV Just Dreaming, if at all. Sometimes there is no space

20  available for charter vessels like MV Just Dreaming to pick up guests, resulting in failed or late

21  reservations and increased fuel and wage costs.

22      31.    Defendants do not use the fees collected from Plaintiff and all others similarly

23  situated to maintain the North Side Dock, nor are the fees even reasonably approximated to do so.

24  Defendants provide a stable, secured, and protected dock on the South Guest Dock of South Beach

25  Harbor for the exclusive use of non-interstate recreational vessels. The North Side Dock, which

26  Defendants force commercial vessels like MV Just Dreaming to use, is not secured or protected,

27  exposing the vessels to damage from Bay surges and making passenger loading difficult and

28

CLASS ACTION COMPLAINT

1  potentially dangerous. Additionally, for the last three years, Defendants rarely inspect or maintain

2  the North Side Dock despite its poor condition and repeated requests by tenants to do so. Indeed,

3  despite repeated public records requests, Plaintiff has been unable to find any study or assessment

4  by Defendants of the costs necessary to maintain the North Side Dock or any allocation of relative

5  use between recreational and commercial vessels.

6      32.    Yet, Defendants' budget for operation of South Beach Harbor for fiscal years 2015

7  through 2021 shows that approximately $500,000 per year will be taken as "rent" from the Port to

8  the Defendant City, and approximately $1,000,000 will go to Defendant City's general funds. (*See*

9  Attachment 6: (budget for operation of South Beach Harbor from 2015 through 2021).)

10     33.    Beginning in at least four years prior to the filing of this complaint to the present,

11 Defendants' excessive fees imposed on commercial vessels have resulted in a profit to

12 Defendants, far in excess of the costs to maintain the North Side Dock. Despite that Plaintiff and

13 others similarly situated have Constitutional rights to land at the Port and pay only those fees

14 permitted under the Tonnage and Commerce Clauses, Defendants have forced commercial vessel

15 operators to pay their illegal charges under the threat of revoking commercial access to the North

16 Side Dock entirely, which would almost certainly spell the end of the operators' businesses.

17     34.    In 2016, Defendants demanded that commercial vessel operators pay even higher

18 fees pursuant to the 2016 Landing Agreement. The 2016 Landing Agreement purports to reserve

19 Defendants' right to increase its fees "at any time" in any amount. (Attachment 3: at p. 2, ¶ 5.1(a)

20 ("All Fees shall be paid to Port, without any deduction, setoff or counterclaim whatsoever. …

21 Port may increase any Fee at any time…").)

22     35.    The 2016 Landing Agreement also imposes a supplemental 7% Gross Revenue

23 Fee, which requires the commercial vessel operator to pay 7% percent of its monthly gross

24 revenues in any month when (i) the 7% percent fee for such calendar month exceeds the (ii) the

25 base landing fee for such calendar month. (*See* Attachment 3: at p. BLI-4.) The 7% Gross Revenue

26 Fee includes the vessel's sale of alcoholic beverages. (*See* Attachment 3:  at Ex. F.) Plaintiff is

27 informed and believes that Defendants impose a similar percentage fee on their land-based lessees

28

1  that is also calculated in part based on the revenue from the sale of alcoholic beverages.

2  36.    The 7% Gross Revenue Fee is illegal. Under California law, any entity licensed to

3  sell and serve alcoholic beverages onsite does so under the supervision and regulation of

4  California's Department of Alcohol Beverage Control ("ABC"). Each such licensee is prohibited

5  from sharing revenue from alcoholic beverage sales with non-licensees like Defendants. *See* Cal.

6  Bus. & Prof. Code § 23300. Violation of section 23300, by either the licensee or a non-licensee, is

7  a criminal misdemeanor. *See* Cal. Bus. & Prof. Code § 23301.

8  37.    The 2016 Landing Agreement contains many other illegal and unenforceable

9  terms. For example, it requires commercial vessel operators to waive every claim for damages

10  against the Defendants in violation of the First Amendment right to petition the government for a

11  redress of grievances. (*See* Attachment 3: at p. 18, ¶ 20.3 ("Licensee agrees that Licensee will

12  have no recourse with respect to, and Port shall not be liable for, any obligation of Port under this

13  License, or for any Claim based upon this License…"). It also contains provisions which waive

14  any right of recovery against Defendants for any loss or damage sustained by Plaintiff and others

15  similarly situated while on Port property. (*See* Attachment 3: at pp. 12-14.)

16  38.    In addition, the 2016 Landing Agreement provides that Defendant City can incur

17  costs and expenses for Plaintiff and others, without limitations, such as the hiring of CPAs for an

18  audit, and permits Defendant City to set insurance policy limits in any amount, thereby drastically

19  increasing the expenses for the operation of the vessel and making it virtually impossible for the

20  vessel to operate.

21  39.    Defendants can revoke the agreement at any time, without reason, and prohibit the

22  vessel from landing at the Port with no right to seek judicial review or other redress of grievances.

23  (*See* Attachment 3: p. 2 at ¶ 4.)

24  40.    In addition to its illegal terms, on information and belief, the 2016 Landing

25  Agreement is also unenforceable because Defendants have never secured approval or

26  authorization for the contract from BCDC, as required by Defendants' operating permit.

27  41.    Beginning in June 2016, Defendants ordered Plaintiff and others similarly situated

28

13
CLASS ACTION COMPLAINT

to either sign the illegal 2016 Landing Agreement or cease all commercial interstate operations as of October 1, 2016.  Some of Defendants' commercial tenants signed the 2016 Landing Agreement, while others like Plaintiff refused. Defendants repeated their order to holdouts like Plaintiff on November 8 and November 10, 2016, again threatening that any commercial vessel operator who refused to pay Defendants' illegal fees and waive various other Constitutional rights under the 2016 Landing Agreement would not be able to use the Port for commercial activities at all as of January 1, 2017.  Defendants as the entity in possession of the premises ordered that any commercial landing at the North Side Dock by a vessel operator who had not signed the 2016 Landing Agreement was revoked and not authorized, and would thereby constitute criminal trespass under California Penal Code section 602, which would subject the operators to arrest and seizure of the vessel.

42.   Defendants were well aware of the illegality of their demands. Plaintiff and others met with Defendants, including Individual Defendants, in July, September and November 2016 to explain why Defendants' conduct and the 2016 Landing Agreement violated both federal and state law. Plaintiff provided Defendants with unambiguous authority demonstrating that Defendants' demanded fees violated the Tonnage and Commerce Clauses, Rivers and Harbors Act, and California law regarding the licensed sales of alcoholic beverages. (*See* Attachments 4, 5, 8 & 9) Defendants refused to correct their actions, with Individual Defendants Bauer and Dailey insisting that Defendants were entitled to "a piece of the action" in exchange for Plaintiff and others' access to the North Side Dock for commercial purposes. In other words, if Plaintiff and others did not pay Defendants' illegal fees and expose themselves to criminal liability for sharing alcohol revenues with a non-licensee, Defendants would lock them out of South Beach Harbor and effectively shut down the commercial vessel operators' businesses.

43.   The 2016 Landing Agreement is the culmination of Defendants' repeated, intentional efforts to strip Plaintiff and others similarly situated of their federal and state rights in order to make a profit for Defendant City. Defendants succeeded in stripping those rights by their coercive actions, including demanding the payment of illegal (indeed, criminal) fees as a condition

of doing business from the City's Port, which is under Defendants' exclusive control.

44.     Plaintiff and others refused to sign the 2016 Landing Agreement, but have been forced to pay Defendants' illegal 7% Gross Revenue Fee as of January 2017 for charters that had been reserved before Defendants' final November 2016 orders. Standing on their rights, Plaintiff and others similarly situated are currently locked out of South Beach Harbor (and, in reality, the City and County of San Francisco) for purposes of conducting their businesses. The City of San Francisco is the hub of San Francisco Bay charter businesses. Without the ability to land at South Beach Harbor, businesses like Plaintiff's are essentially valueless.

## CLASS ACTION ALLEGATIONS

45.     Class Definition: Plaintiff brings this action on behalf of itself and all others similarly situated as a representative of a class action pursuant to Federal Rule of Civil Procedure 23, and seeks to represent classes defined as follows:

(a) All persons and entities licensed by the USCG for commercial passenger service who, at any time during the three years preceding the filing of this action to the date of Class Certification have landed at, moored, or caused passengers to traverse South Beach Harbor and incurred or paid fees to Defendants for that opportunity;

(b) All persons and entities who, at any time during the three years preceding the filing of this action to the date of Class Certification, were licensed commercial passenger vessel operators subject to Defendants' demand that they execute and/or comply with the terms, payments and conditions of the 2016 Landing Agreement in order to use South Beach Harbor;

(c) All persons and entities who, at any time during the three years preceding the filing of this action to the date of Class Certification, were licensed commercial passenger vessel operators and signed the 2016 Landing Agreement and complied with its terms;

(d) All persons or entities who, for the past three years to the present, have been licensed for sale and consumption of alcoholic beverages and who were or are subject to Defendants' demand for payment of a percentage of revenues or profits.

46.     Ascertainability: Defendants maintain records of the commercial vessel owners landing at South Beach Harbor who were subject to landing fees for the past three years. Defendants also maintain records of each vessel subject to Defendants' demands to execute the 2016 Landing Agreement and similar agreements imposed on Port tenants that demand payment of gross revenue percentage fees. Defendants also maintain records of all vessels commercially

licensed for passenger service in San Francisco Bay, its tributaries and sounds, and those on the West Coast which would be subject to the demands of Defendants to execute or comply with the terms of the 2016 Landing Agreement. Defendants also maintain records of each agreement entered into with each holder of an on-sale commercial license issued by ABC by which they seek any percentage from the sale of alcohol, as well as the records of receipts of the payment of those amounts.

47.    Numerosity: This action is appropriately suited for a class action because Plaintiff is informed and believes and thereon alleges that the class is so numerous that joinder of all members would be impractical and over the last three years there are in excess of 75 commercial vessel owners who land and or who could have landed at South Beach Harbor, Pier 40, and there are at least 75 commercial vessel operators subject to Defendants' demands to execute or comply with the terms of the 2016 Landing Agreement. There are more than a dozen land-based restaurants at the Port, and upon information and belief, many others who are subject to Defendants' demands for payment of a percentage of gross revenues.

48.    Commonality: This action is appropriately suited for class action treatment because it involves common questions of law and fact related to the putative class that predominate over individual issues. These common questions include but are not limited to:

(a)    Whether Plaintiff, and all class members have been charged, over the last three years and to date of trial, more than the cost to maintain the North Side Dock.

(b)    Whether Plaintiff and all class members are required to pay into the future more than the cost to maintain the North Side Dock.

(c)    Whether Plaintiff and all class members were subject to Defendants' discriminatory terms for usage of the Port including Defendants' demands for fees and conditions which violate the Constitution of the United States and the Rivers and Harbors Act.

(d)    Whether Plaintiff and class members were subject to discriminatory fees and conditions for use of South Beach Harbor imposed by Defendants as commercial vessels and as vessels involved in interstate commerce, as compared to fees imposed by Defendants on

16

CLASS ACTION COMPLAINT

1  recreational vessels not engaged in interstate commerce.

2      (e)    Whether Defendants' charge of a percentage fee of gross or net revenues of any

3  establishment which serves alcoholic beverages violates California Business and Professions

4  Code section 23300.

5      49.    Typicality: This action is appropriately suited for a class action as Plaintiff's

6  claims are typical of the class as defined, as Defendants set uniform charges for all commercial

7  and non-commercial vessels using South Beach Harbor, including Plaintiff. In addition, the

8  charges imposed on and paid by on-sale alcohol license holders, were uniformly imposed on class

9  members, including Plaintiff.

10     50.    Adequacy: Plaintiff will fairly and adequately protect the interests of all members

11 of the class because it has standing as a tenant of the Port, its interests are aligned with the class,

12 it has no conflicts of interest, and it has personal knowledge of Defendants' conduct as described

13 herein. Plaintiff has selected counsel which will adequately represent the class.

14     51.    Additionally, prosecuting separate actions by individual class members creates a

15 risk of:

16     (a) inconsistent or varying adjudications with respect to individual class members that

17 would establish incompatible standards of conduct for the party opposing the class; and

18     (b) adjudications with respect to individual class members that, as a practical matter,

19 would be dispositive of the interests of the other members not parties to the individual

20 adjudications or would substantially impair or impede their ability to protect their interests.

21              **FILING OF GOVERNMENT CLAIMS AND REJECTIONS**

22     52.    Plaintiff complied with the Claims filing requirements of California Government

23 Code Section 910 *et seq*. for claims of violations of California Law. On or about November 15,

24 2016, Plaintiff filed a Government Claim setting out the facts as stated herein with Defendant

25 City, a government entity, which identified all Individual Defendants and their conduct. On

26 December 16, 2016, Defendants denied said claim in its entirety and Plaintiff timely brought this

27 action.

28

1    ///

2    ///

3    **FIRST CLAIM FOR RELIEF**
     **(Violation of The Civil Rights Act, 42 USC § 1983:**
4    **Tonnage Clause, Commerce Clause and Rivers & Harbors Act)**
     **(Plaintiff for Itself and All Others Similarly Situated against all Defendants)**

5

6    53.     Plaintiff incorporates each of the foregoing allegations here.

7    54.     Each Defendant herein was and is a state actor, by reason of (a) being a

8    municipality authorized by law and acting within the powers of said authorization, (b) for the

9    individual Defendants due to their position as a municipal organization, and acting as managing

10   agents for the municipal organization with their power over Plaintiff and all of those similarly

11   situated, and that each was acting in the capacity of a government agency government manager

12   "acting under color of law."

13   55.     Defendants, and each of them, sought to, did attempt to interfere, and did interfere

14   with the federal rights of Plaintiff, and all others similarly situated, under the Tonnage Clause, the

15   Commerce Clause, the First Amendment, and the Rivers and Harbors Act under color of State

16   law.

17          **Violation of the Tonnage Act.**

18   56.     The United States Constitution, U.S. Const., art. I, § 10, cl. 3, provides, in

19   pertinent part, that "[n]o State shall, without the Consent of Congress, lay any duty of Tonnage . .

20   ."

21   57.     The Tonnage Clause prohibits states and localities from imposing any assessment

22   regardless of name or form, even though not measured by tonnage of the vessel, which operate to

23   impose a charge for the privilege of entering, trading in, or lying in a port.

24   58.     A duty of Tonnage is permissible under the Tonnage Clause only to the extent

25   that: (a) the proceeds of such a duty are used for services rendered to and enjoyed by the vessel,

26   (b) such services enhance the safety and efficiency of interstate commerce, and (c) the duty

27   places only minimal burdens on interstate commerce.

28

59.     Since 2013 to date Plaintiff, and others similarly situated, paid Defendants fees in an amount that greatly exceeded the value of services rendered by Defendants to Plaintiff. The amounts collected do not bear a reasonable relation to the actual costs of services Defendants provide to Plaintiff and others similarly situated.

60.     Defendants use a significant portion of the proceeds of the fees for purposes that do not enhance the safety and efficiency of interstate commerce and navigation. The revenues generated by the fees exceed by a large margin the amount reasonably necessary to compensate Defendants for expenditures for direct services used by Plaintiff and others similarly situated.

61.     The fees are a charge for the privilege of entering, trading in, or lying in a port and thus are subject to the Constitutional prohibition against laying "any Duty of Tonnage."

62.     The fees, in whole or in part, burden interstate commerce.

63.     By reason thereof, the fees imposed and sought to be imposed by Defendants are excessive or otherwise violate the Tonnage Clause.

**Violation of the Commerce Clause.**

64.     The Commerce Clause of the U.S. Constitution provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; . . ." (the "Commerce Clause").

65.     An entry fee or similar charge violates the Commerce Clause and fundamental right to travel if it (i) discriminates against interstate commerce, (ii) is not based upon a fair approximation of use, or (iii) is excessive in relation to the cost to the government of the benefits conferred.

66.     As described above, Defendants' fees discriminate against interstate commerce because they impose burdens on commercial vessels operating in interstate commerce that far exceed those imposed on non-commercial vessels.

67.     As described above, Defendants' fees are not based upon a fair approximation of Plaintiff's use of the Port and are excessive in relation to the cost to Defendants of the benefits conferred upon Plaintiff.

CLASS ACTION COMPLAINT

**Violation of First Amendment Right to Petition Government for Grievances.**

68.     In order to land a vessel at South Beach Harbor, Defendants insist that Plaintiff, and those similarly situated, agree that Defendants can set the fees at any level they wish, take any percentage of passenger sale and alcohol sales they wish, and impose any other conditions they wish and that Plaintiff and others similarly situated may not complain or seek a redress of their grievances, including by way of lawsuit.

69.     In order to operate a vessel in interstate commerce and/or on the navigable waters of the United States under the terms and conditions guaranteed by the Constitution and federal statutes, Defendants have taken and have forced Plaintiff, and those similarly situated, to surrender of any right to seek a redress of grievances, as guaranteed under the First Amendment to the Constitution of the United States.

70.     Plaintiff, and those similarly situated, are thus deprived of their constitutional and statutory rights to operate and to seek a redress under the First Amendment if they wish to continue to operate a motor vessel in accordance with their license to do so.

**Violation of the Rivers & Harbors Act.**

71.     The Rivers and Harbors Act prohibits taxation, fees, and charges for the carrying of passengers and property to, from, in and across the ports in the United States, greater than the cost to maintain the portion of the facility and prohibits any burden other than a "small" burden for the benefit of maintaining the facility. In relevant part, the statute provides that:

> No taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States, or under the right to freedom of navigation on those waters, except for (2) reasonable fees charged on a fair and equitable basis that (A) Are used solely to pay the cost of a service to the vessel or water craft; (B) Enhance the safety and efficiency of interstate and foreign commerce; and (C) Do not impose more than a small burden on interstate or foreign commerce.

72.     Plaintiff's vessel operates at all times on navigable waters subject to the authority of the United States and under the right of freedom of navigation on those waters.

73.    As described above, Defendants' fees are not reasonable and are not charged on a fair and equitable basis regarding the costs to operate the North Side Dock; are used for purposes other than to pay for the cost of services to Plaintiff and its passengers; do not enhance the safety and efficiency of interstate commerce; and impose burdens on interstate commerce.

74.    As described above, Defendants have appropriated revenue obtained from the fees for a variety of purposes falling outside the permissible scope of the Rivers and Harbors Act.

75.    As a result of Defendants' violations of 42 U.S.C. § 1983, Plaintiff, and those similarly situated, have incurred injuries and have been harmed because (a) they have in large part been prevented from operating in the navigable waters of the San Francisco Bay by not having a location to land and pick up from at South Beach Harbor, (b) have been harmed because they have paid and continue to pay landing fees and charges in excess of the fair and equitable assessment of the expense to maintain the North Side Dock; (c) have been required to incur costs, expenses and terms and conditions unrelated to the costs to maintain the dock; and (d) have paid and continue to pay percentage assessments relating to income generated during a cruise, including seven percent (7%) of all sales of alcohol.

76.    Defendants threaten Plaintiff and others similarly situated with irreparable injury for which there is no adequate remedy at law, and as to which injunctive relief is a necessary and appropriate remedy to permanently enjoin Defendants, jointly and severally, from committing such violations.

77.    An actual controversy exists because Defendants' fees create an actual and present controversy regarding the rights and legal rights and relations of Plaintiff and others similarly situated and Defendants.

78.    Defendants' violations threaten Plaintiff and other similarly situated with and have already caused injury, making declaratory relief a necessary and appropriate remedy in permanently declaring the constitutional rights and legal relations of Plaintiff and others similarly situated.

79.    Plaintiff and others similarly situated are entitled to compensatory damages,

punitive damages for Defendants' malicious, intentional, or recklessly and/or callously indifferent conduct, and costs, including attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Violation of the Bane Act, California Civil Code § 52.1)
### (Plaintiff For Itself and All Others Similarly Situated against Defendants)

80.     Plaintiff restates and incorporates each of the foregoing allegations.

81.     Under California Civil Code Section 52.1(b), "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), ["interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, …"] may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."

82.     By this claim, Plaintiff, and all others similarly situated, at all times relevant, have sought to and continue to seek the peaceable exercise and enjoyment of the rights guaranteed under the Constitution and laws of the United States and the State of California.

83.     Defendants, and each of them, sought to and did attempt to interfere, and did interfere with the rights of Plaintiff, and all others similarly situated, set out in this complaint under the Constitution and laws of the United States and the State of California by the imposition of threat, intimidation and coercion by preventing Plaintiff, and those similarly situated to enjoy their rights under the Constitution and laws of the United States and the State of California.

### Violations of the Tonnage Clause, Commerce Clause, First Amendment, and Rivers and Harbors Act, 33 U.S.C. § 5.

84.     The Tonnage Clause prohibits taxation, fees, and charges for those involved in passage over ports of the United States, including passage on the navigable waters of the United States, for carrying passengers to, from, in and across the Ports in the United States, greater than the cost to maintain the dock utilized by the passengers. Defendants, and each of them, attempted to and did force, intimidate, and coerce and attempt to force, intimidate, and coerce Plaintiff and

22

1  others similarly situated to pay fees in violation of the Tonnage Clause, as described above,

2  which are incorporated by reference here.

3       85.     The Commerce Clause prohibits fees or other charges upon passengers and

4  property in transport and commerce in excess of the costs to maintain the dock and which does

5  not discriminate against those involved in interstate commerce. Defendants, and each of them,

6  attempted to and did force, intimidate, and coerce and attempt to force, intimidate, and coerce

7  Plaintiff and others similarly situated to pay fees in violation of the Commerce Clause, as

8  described above, which are incorporated by reference here.

9       86.     The First Amendment guarantees Plaintiff and others similarly situated the right

10  to seek redress of grievances against all government entities, including the Defendant City and its

11  officers and managers. Defendants withhold and prevent Plaintiff and those similarly situated

12  from the right to land at the South Beach Harbor unless and until Plaintiff and others similarly

13  situated sign the 2016 Landing Agreement and surrender all rights under the First Amendment to

14  seek redress of their grievances.

15       87.     The Rivers and Harbors Act prohibits fees and charges for the carrying of

16  passengers and property to, from, and across the ports in the United States, greater than the cost

17  to maintain the portion of the facility utilized by the passengers or property, and which

18  discriminate against those involved in Interstate Commerce, and prohibits any imposition of a

19  burden other than a "small" amount for the benefit of maintaining the facility. Defendants, and

20  each of them, attempted to and did force, intimidate, and coerce and attempt to force, intimidate,

21  and coerce Plaintiff and others similarly situated to pay fees in violation of the Rivers and

22  Harbors Act, as described above, which are incorporated by reference here.

23       88.     By their conduct, specifically by means of threats, intimidation, or coercion, and

24  attempts to interfere by threats, intimidation, or coercion, Defendants sought to strip Plaintiff of

25  and interfere with each of these rights guaranteed to Plaintiff and those similarly situated.

26      **California Business & Professions Code § 23300.**

27       89.     At all times relevant, Plaintiff, and each similarly situated vessel operator in

28

1    interstate commerce, held a license issued by the State of California, Department of Alcohol

2    Beverage Control, for the sale of alcohol, with the attendant protections of the California

3    Business and Professions Code section 23300.

4          90.    California Business and Professions Code section 23300 limits the right to collect

5    any portion of the fee from the sale of alcohol. Under that statute, "no person shall exercise the

6    privilege or perform any act which a licensee may exercise or perform under the authority of a

7    license unless the person is authorized to do so by a license issued pursuant to this division."

8    Violation of section 23300 by either a licensee or non-license is a criminal misdemeanor. *See* Cal.

9    Bus. & Prof. Code § 23301.

10          91.    Under the 2016 Landing Agreement and similar agreements, Defendants demand

11    7% of the income from Plaintiff and other tenants' sales of alcohol, even though Defendants are

12    not licensed to share such revenue.

13          92.    Plaintiff and others similarly situated have been forced by Defendants to make

14    such payments to Defendants, thereby exposing Plaintiff and others similarly situated and

15    Defendants to criminal liability.

16          93.    By their conduct, specifically by means of threats, intimidation, or coercion, and

17    attempts to interfere by threats, intimidation, or coercion, Defendants sought to strip Plaintiff and

18    others similarly situated of and interfere with each of these rights guaranteed to Plaintiff and

19    others similarly situated.

20    **Defendants' Threats, Intimidation and Coercion.**

21          94.    From 2013 through 2016, Defendants coerced, threatened and intimidated

22    Plaintiff and others similarly situated to pay Defendants' illegal fees under the threat that

23    Defendants would prohibit and strip Plaintiff and others from landing at South Beach Harbor for

24    commercial purposes, thereby prohibiting Plaintiff and others from conducting their lawful

25    business of charters on San Francisco Bay. The City of San Francisco is the hub of San Francisco

26    Bay charter businesses. Without the ability to land at South Beach Harbor, businesses like

27    Plaintiff's are essentially valueless. Defendants used their monopoly over the Port to coerce

28

1    Plaintiff and those similarly situated into paying exorbitant landing fees, as Plaintiff and others

2    had no real choice but to comply in order to stay in business. Plaintiff, and those similarly

3    situated have invested years of work to build their business, have large investments in equipment

4    and have other obligations to all of which would be harmed or lost if Plaintiff, and those similarly

5    situated, could not continue to do business at South Beach Harbor.

6        95.    From 2016 through the date of trial, Defendants coerced, threatened and

7    intimidated Plaintiff and others similarly situated to pay Defendants' illegal fees. Specifically

8    Plaintiff and others similarly situated were forced by Defendants to pay the 7% Gross Revenue

9    Fee, which covered alcohol sales, thereby exposing themselves to criminal liability, in exchange

10   for permitting charter landings at South Beach Harbor for commercial purposes.

11       96.    Plaintiff and others similarly situated were coerced by Defendants to waive their

12   rights under the First Amendment of the Constitution via the 2016 Landing Rights Agreement, in

13   exchange for landing at South Beach Harbor for commercial purposes.

14       97.    Plaintiff and others similarly situated have a Constitutional and statutory right to

15   land at South Beach Harbor to pick up and drop off passengers commercially and to pay only

16   those fees permitted under the Tonnage and Commerce Clauses of the Constitution. By means of

17   said coercion in the form of Defendants' demands for illegal fees and exposure to criminal

18   liability, Defendants knowingly and intentionally interfered with and attempted to interfere with

19   the constitutional and statutory rights of Plaintiff and others similarly situated.

20       98.    As a result of Defendants' threats, intimidation and coercion, Plaintiff, and all

21   those similarly situated, have suffered a deprivation of their rights under federal law.

22       99.    As a result of the threats, intimidation and coercion, Plaintiff, and all those

23   similarly situated, each paid money to Defendants which Defendants are not entitled to. Plaintiff,

24   and all those similarly situated, seek the return of all moneys paid for landing their vessels at

25   South Beach Harbor from four years prior to the date of the filing of this complaint, to date of

26   trial, which charge was not calculated in compliance with the Tonnage Clause, Commerce

27   Clause, the Rivers and Harbors Act or California Business and Professions Code section 23300.

28

100.     On behalf of itself and all others similarly situated, Plaintiff, on behalf of others similarly situated, seeks compensatory damages, treble damages, and costs, including attorneys' fees.

101.     Pursuant to Civil Code Section 52.1, and due to a multiplicity of suits and uncertainty of damages, Plaintiff, for itself and all those similarly situated, seek the issuance of an injunction precluding the retention of fees and costs for landing from February 14, 2013 to date not calculated based any fees and costs calculated in excess of those permitted by the Tonnage Clause, Commerce Clause, Rivers and Harbors Act, or California Business and Professions Code section 23300.

## THIRD CLAIM FOR RELIEF
### Declaratory and Injunctive Relief
**(Plaintiff For Itself and All Others Similarly Situated against Defendants)**

102.     Plaintiff incorporates each of the foregoing allegations.

103.     There exists a case and controversy between the parties regarding Defendants' violations of Plaintiff's Constitutional and statutory rights, and the rights of others similarly situated, as set out herein.

104.     No resolution is likely absent a declaration of rights as to the actions described herein.

105.     Plaintiff seeks a declaratory judgment acknowledging Defendants' past and ongoing violations of the rights of Plaintiff and those similarly situated, and ordering the correction of and protections of those rights, including right to land at the North Side Dock and pay no more than the amount permitted under the Tonnage Clause, Commerce Clause, Rivers and Harbors Act, and California Business and Professions Code section 23300.

106.     Plaintiff seeks a declaratory judgment that the 2016 Landing Agreement, and all similar agreements between Defendants and class members, are illegal and unenforceable because they violate Plaintiff and class members' rights under the United States and California Constitutions, and federal and state statutory law.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment)**
**(Plaintiff for Itself and All Similarly Situated against Defendants)**

107.  Plaintiff incorporates each of the foregoing allegations.

108.  As of at least 2013, Plaintiff and others similarly situated paid landing fees to Defendants in exchange for the right to land at the North Side Dock of South Beach Harbor to load and unload passengers on commercial vessels.

109.  Defendants' fees exceeded the amount Defendants are permitted to charge for use of the North Side Dock of South Beach Harbor under federal and California law. As such, Defendants have knowingly retained a benefit (an excess of fees) and have unjustly retained that benefit at the expense of Plaintiff and others similarly situated.

110.  Plaintiff and others similarly situated are entitled to recover from Defendants all fees paid thereunder that were illegal and exceeded the amounts Defendants could charge consistent with the Tonnage and Commerce Clauses, the Rivers and Harbors Act, and California Business & Professions Code section 23300.

### PRAYER

Wherefore, Plaintiff prays for judgment, for itself and those similarly situated, as follows:

1.      For an order of restitution commanding the return of excessive landing fees taken by Defendants from Plaintiff and those similarly situated for the last three years for landing at South Beach Harbor, in an amount to be proven at trial.

2.      For an order of restitution commanding the return of all fees and money taken by Defendants from Plaintiff and those similarly situated in violation of California Business and Professions Code section 23300, in amount to be proven at trial.

3.      For an order enjoining Defendants from imposing fees, terms, conditions, or other charges in violation of the United States Constitution and Rivers and Harbors Act for landing at South Beach Harbor.

CLASS ACTION COMPLAINT

4.    For an order enjoining Defendants from imposing fees or other charges in violation of California Business and Professions Code section 23300.

5.    For an order declaring the 2016 Landing Agreement illegal and unenforceable, voiding any such "agreement" having been signed.

6.    For an order declaring any other agreement between Defendants and their tenants that imposes charges in violation of California Business and Professions Code section 23300 as illegal and unenforceable.

7.    For compensatory damages in an amount to be proven at trial.

8.    For treble damages under the Bane Act, California Civil Code section 52.1, in an amount to be proven at trial.

9.    For punitive damages under 42 USC § 1983 and/or the Bane Act, California Civil Code section 52.1.

10.    For costs of suit and attorneys' fees under 42 USC § 1983 *et seq.*, and/or California Civil Code § 52.1, and/or California Civil Code § 1021.5.

11.    For any further relief that the court deems just and proper.

Date:  February 22, 2017                    Respectfully submitted,

                                                            **ONGARO PC**

                                                            _____
                                                            David R. Ongaro
                                                            Attorneys for Plaintiff
                                                            LIL' MAN IN THE BOAT, INC.

CLASS ACTION COMPLAINT

**<u>JURY TRIAL DEMAND</u>**

Plaintiff Lil' Man In The Boat, Inc., hereby demands a jury trial on all claims and potential claims.

Date: February 22, 2017                          Respectfully submitted,

                                                 **ONGARO PC**

                                                 _____
                                                 David R. Ongaro
                                                 Attorneys for Plaintiff
                                                 LIL' MAN IN THE BOAT, INC.

1

## ATTACHMENTS TO THE COMPLAINT

2

| # | Date | Description |
|---|------|-------------|
| 1 | 1994 | Lease Agreement |
| 2 | 2006 | 2006 Lease Agreement |
| 3 | 2016 | 2016 Landing Agreement |
| 4 | July 20, 2016 | Letter by Lil' Man to each defendant |
| 5 | October 6, 2016 | Letter by Attorney for Plaintiff to Deputy City Attorney |
| 6 | | 2015-2121 Budget for the operation of South Beach Harbor |
| 7 | August 2016 | Bill Allowing Exception to 23300 - AB 2135 (Levine) |
| 8 | October 17, 2016 | Memo of October 17, 2016, Re Passenger Ves. at North Dock doing Charters |
| 9 | November 8, 2016 | Confirmed Content of Meeting of November 8, 2016 |
| 10 | | Objections To Specific Provisions In the 2016 Landing Agreement |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28