UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIL' MAN IN THE BOAT, INC., <br> Plaintiff, <br> v. <br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br> Defendants. | Case No. 17-cv-00904-JST <br><br> **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Re: ECF No. 40 |

Before the Court is Defendants' motion for judgment on the pleadings. ECF No. 40. For the reasons stated below, the Court will grant the motion.

## I. FACTUAL BACKGROUND

Plaintiff Lil' Man In the Boat, Inc. ("Lil' Man") "owns and operates a licensed commercial charter Motor Vessel 'Just Dreaming' that provides transportation and hospitality services on the San Francisco Bay both for locals and visitors from all over the globe." ECF No. 33, First Amended Complaint ("FAC") ¶¶ 1.[1] Since 2006, Lil' Man has "operate[d] within the jurisdiction of the Port of San Francisco, and by Port regulation, must load and unload its passengers at the North Side Dock of Pier 40's South Beach Harbor." *Id.* ¶¶ 1, 32. Defendants are the City and County of San Francisco, the San Francisco Port Commission, Elaine Forbes, Peter Daley, Jeff Bauer, and Joe Monroe (collectively referred to as "Defendants"). *Id.* ¶ 4. Defendants are jointly responsible for the regulation of the Port of San Francisco. *Id.* ¶ 5. As part of their responsibilities, Defendants "exclusively determine[] all landing fees, regulations, and requirements for South Beach Harbor." *Id.* ¶ 5.

---

[1] For the purposes of deciding this motion, the Court accepts as true all allegations set forth in Plaintiff's FAC. *Bill v. Brewer*, 799 F.3d 1295, 1299 (9th Cir. 2015).

Lil' Man filed this case because San Francisco changed the terms under which it allowed boats to dock at South Beach Harbor. For the years 2013 through 2015, the landing fee for commercial vessels such as Just Dreaming was $160 per hour. *Id.* ¶ 32, 34. In 2016, Defendants introduced a "Landing Agreement" (the "2016 Agreement") which required commercial vessel operators to enter a "written landing rights agreement" with Defendant. *Id.* ¶ 12. The agreement increased landing fees "to $220 for commercial vessel operators," gave Defendants the right to increase the required fees "at any time," and "impose[d] a supplemental 7% Gross Revenue Fee." *Id.* ¶¶ 32, 39, 40. The gross revenue fee "requires the commercial vessel operator to pay 7% percent of its monthly gross revenues in any month when (i) the 7% percent fee for such calendar month exceeds the (ii) base landing fee for such calendar month." *Id.* ¶ 40. This gross revenue fee includes profit realized from the sale of alcoholic beverages. *Id.* The 2016 Agreement also includes an "Exculpation and Waiver" clause, which Plaintiff construes to require a waiver of its right to bring "every claim for damages against Defendants[,] in violation of the First Amendment right to petition the government for a redress of grievances." *Id.* ¶¶ 14, 20, 42.

In June 2016, Defendants "ordered Plaintiff and others similarly situated to either" sign the 2016 Agreement "or cease all commercial interstate operations as of October 1, 2016." *Id.* ¶ 46. Some commercial tenants signed the agreement, but Plaintiff did not, even though Defendants repeatedly threatened that failure to sign the agreement would prevent Plaintiff from using the Port and expose it to criminal trespass charges. *Id.* Plaintiff paid the 7% gross revenue fee on two occasions in order to continue its previously reserved operations. *Id.* ¶¶ 17, 49. Plaintiff asserts that the 2016 Agreement essentially "locked [it] out of South Beach Harbor (and, in reality, the City and County of San Francisco) for purposes of conducting [its] business." *Id.*

Plaintiff's FAC makes three claims relating to the 2016 Agreement. First, Plaintiff brings a claim for violation of 42 U.S.C. § 1983 ("Section 1983") claim based on violations of the Tonnage Clause, the Commerce Clause, the First Amendment, and the Rivers & Harbors Act. Second, Plaintiff brings a claim entitled "Declaratory and Injunctive Relief," although the body of the complaint seeks declaratory relief only. *Id.* ¶¶ 85-89. And third, Plaintiff brings a claim for unjust enrichment.

Plaintiff's FAC also brings a putative class action. Plaintiff seeks to represent the following four classes:

> (a) All persons and entities licensed by the USCG for commercial passenger service who, at any time during the four years preceding the filing of this action to the date of Class Certification have landed at, moored, or caused passengers to traverse South Beach Harbor and incurred or paid fees to Defendants for that opportunity;
>
> (b) All persons and entities who, at any time during the four years preceding the filing of this action to the date of Class Certification, were licensed commercial passenger vessel operators who were subject to Defendants' demand that they execute and/or comply with the terms, payments, and conditions of the 2016 Landing Agreement in order to use South Beach Harbor;
>
> (c) All persons and entities who, at any time during the four years preceding the filing of this action to the date of Class Certification, were licensed commercial passenger vessel operators and signed the 2016 Landing Agreement and complied with its terms;
>
> (d) All persons or entities who, for the past four years to the present, have been licensed for sale and consumption of alcoholic beverages and who were or are subject to Defendants' demand for payment of a percentage of revenues or profits.

*Id.* ¶ 50.

## II. PROCEDURAL BACKGROUND

Plaintiff filed its original complaint on February 22, 2017, making four claims: (1) violation of Section 1983 based on violations of the Tonnage Clause, the Commerce Clause, the First Amendment, and the Rivers & Harbors Act, (2) violation of the Bane Act, (3) declaratory and injunctive relief, and (4) unjust enrichment. ECF No. 1. On March 30, 2017, Defendants moved to dismiss the complaint in its entirety. ECF No. 12. The Court denied the motion to dismiss with respect to the Tonnage Clause, Dormant Commerce Clause, and Rivers & Harbors Act, and granted it with respect to the Bane Act claim. ECF No. 29 at 19. It allowed the derivative claims for declaratory relief, injunctive relief, and restitution to survive. *Id.* at 18.

Plaintiff filed its FAC on August 14, 2017. ECF No. 33. Defendants filed this motion for judgment on the pleadings on February 22, 2018. ECF No. 40. In the present motion, Defendants argue that the following claims fail as a matter of law: (1) Plaintiff's claims for unjust enrichment

3

and declaratory relief to the extent they each rely on California Business and Professions Code section 23300; and (2) Plaintiffs' claim for violation of the First Amendment right to access the courts.

## III. REQUESTS FOR JUDICIAL NOTICE

Both Plaintiff and Defendants ask the Court to take notice of legislative history documents from the California legislature relating to California Business and Professions Code section 23300.1. ECF Nos. 41, 43.

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court concludes that the documents included by the parties are proper subjects of judicial notice and grants their respective requests. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n. 1 (9th Cir. 2012) (citing *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (finding the Court "may take judicial notice of 'records and reports of administrative bodies'")).

## IV. LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and quotation marks omitted). Under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Brooks v. Dunlop Mfg. Inc.*, No. C 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011). A plaintiff must allege facts that are enough to raise his right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007) (citation omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999) (citation omitted). "Finally, although Rule 12(c) does not mention leave to amend, courts

4

1 have discretion both to grant a Rule 12(c) motion with leave to amend, and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted).

**V.  DISCUSSION**

**A.  Law of the Case**

Plaintiff argues that Defendants' arguments for judgment on the pleadings are foreclosed by the law of the case because Defendants previously moved to dismiss the same claims they now attack here. ECF No. 42 at 12-13. The Court does not agree.

Under the law of the case doctrine, a court may not consider "an issue that has already been decided by the same court or a higher court in the same case." *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (citations omitted). "[T]he law of the case acts as a bar only when the issue in question was actually considered and decided by the first court." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995), *as amended on denial of reh'g* (June 2, 1995); *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982). As even Plaintiff recognizes, Defendants' arguments in the present motion are not the same issues considered and decided by the Court before. *Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094, 1098 (N.D. Cal. 2005) (describing the same issues as ones which are "essentially the same, but with a different emphasis"). The law of the case doctrine therefore does not bar consideration of Defendants' motion.

**B.  California Business and Professions Code section 23300**

Plaintiff brings claims for violation of California Business & Professions Code § 23300, which provides, "No person shall exercise the privilege or perform any act which a licensee may exercise or perform under the authority of a license unless the person is authorized to do so by a license issued pursuant to this division." Cal. Bus. & Prof. Code § 23300. Plaintiff construes this provision to "prohibit[] Defendants from participating in, receiving, or sharing any revenue or profit from alcohol sales within the state." FAC ¶ 13. Plaintiff seeks a declaration that Defendants' alcohol-related charges are prohibited by Section 23300 and also seeks the return of any charges Defendants have already collected. *Id.* ¶¶ 85-96.

5

Defendants argue that Plaintiff cannot sue for an alleged violation of section 23300 because that statute does not give contain a private right of action, and Plaintiff cannot indirectly create a private right of action by recasting its claims as ones for unjust enrichment and declaratory relief. ECF No. 40 at 13, 16. Defendants further argue that Plaintiff's claim would fail even if the Court were to consider it on the merits because Defendants' alcohol-related charges do not violation section 23300. *Id.* at 19.

Defendants are correct that there is no private right of action for a violation of section 23300. The California Constitution grants the Department of Alcoholic Beverage Control ("ABC Department") exclusive jurisdiction to enforce the Alcoholic Beverage Control Act ("ABC Act"), including section 23300. *See City of Oakland v. Superior Court*, 45 Cal. App. 4th 740, 759 (1996) (citing Cal. Const., art. XX, § 22). Under California law, "a statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent." *Farmers Ins. Exch. v. Superior Court*, 137 Cal. App. 4th 842, 850 (2006); *see also id.* at 849-50 ("A statute creates a private right of action only if the enacting body so intended."). The ABC Act does not provide for a private right of action. Cal. Bus. & Prof. Code § 23053.1 (entrusting the ABC Department with the power to bring an action to enforce the ABC Act).

Plaintiff argues that a recent California Court of Appeal decision, *Wiseman Park, LLC v. Southern Glazer's Wine and Spirits, LLC*, recognized that the ABC Department's jurisdiction over ABC Act claims is not entirely exclusive. 16 Cal. App. 5th 110, 123-24 (2017). Plaintiff in that case was a restaurant that sometimes purchased alcoholic beverages from the defendant wholesale distributor. Both were licensed by the ABC. Defendant's form contract required a customer whose invoice was unpaid by a certain time to pay a "carrying charge" in addition to the interest "penalty" mandated by the Alcohol Beverage Control Act. The plaintiff sued the defendant seeking return of the excess charges. In assessing whether it had jurisdiction over the claim, the *Wiseman* court distinguished between two types of claims: claims about whether non-licensees are performing acts that require a license, such as selling alcohol, on the one hand, and other claims, such as contract disputes between licensees, on the other hand. *Id.* at 125-26. The court concluded that the former are under the ABC Department's exclusive jurisdiction, while the latter

6

are not. *Id.* at 121, 126 (citing *California v. LaRue* 409 U.S. 109, 120 (1972) and *Sail'er Inn, Inc. v. Kirby*, 5 Cal.3d 1, 20–21 (1971) for the proposition that the ABC Department has exclusive jurisdiction to enforce improprieties with the sale of alcoholic beverages).

Here, Plaintiff's claims are, at bottom, that Defendants are improperly acting as licensees by sharing in the revenues of alcohol sales. ECF No. 42 at 13-14 (arguing that as non-licensees, Defendants are unlawfully exercising a privilege of a licensee when they seek revenue-sharing fees from alcohol sales). Accordingly, Plaintiff's claims fall within the former category and are barred by the ABC Act's exclusive jurisdiction. *Wiseman* does not change the Court's conclusion that Plaintiff lacks a private right of action to sue for a violation of section 23300.

That Plaintiff's claims are denominated "declaratory relief" and "unjust enrichment" also does not change this result. When a plaintiff lacks a private right of action under a particular statute, she cannot argue around that limitation by bootstrapping her cause of action onto an unjust enrichment or declaratory relief claim based on the same statute. *Peterson v. Cellco Partn.*, 164 Cal. App. 4th 1583, 1596-97 (Cal. App. 4th Dist. 2008); *see also N. County Comms. Corp. v. California Catalog & Tech.*, 594 F.3d 1149, 1158 (9th Cir. 2010) (same with respect to declaratory relief).

Plaintiff argues that the more recent California Supreme Court case of *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 594 (2010), allows a plaintiff to bring common law causes of action related to a violation of law even where there is no private right of action. In *Lu*, the plaintiff – a casino dealer – sued his employer for pooling tips in violation of Labor Code section 351. That section "prohibits employers from taking any gratuity patrons leave for their employees, and declares that such gratuity is 'the sole property of the employee or employees to whom it was paid, given, or left for.'" *Id.* at 594 (quoting Cal. Lab. Code § 351). The casino's policy required dealers to contribute 15 to 20 percent of their tips to a tip pool to be shared among other designated employees who provided service to casino patrons.

The court concluded that section 351 did not "contain a private right to sue." *Id.* at 595. In dicta, however, the court recognized that although a plaintiff could not sue for violations of section 351 because it lacked a private right of action, *id.* at 597, she could, in theory, bring common law

7

claims, such as a claim for conversion, regarding the same conduct:

> Contrary to plaintiff's suggestion, our holding that section 351 does not provide a private cause of action does not necessarily foreclose the availability of other remedies. To the extent that an employee may be entitled to certain misappropriated gratuities, we see no apparent reason why other remedies, such as a common law action for conversion, may not be available under appropriate circumstances.

*Id.* at 603-04. *Lu* does not assist Plaintiff. The common law claims imagined by the *Lu* court existed independently of section 351, and Plaintiff could prove (or at least allege) the elements of those claims without relying on that section. By contrast here, Plaintiff's claims expressly *incorporate* section 23300, and ask the Court to find a violation.

Finally, even if the Court were to consider Plaintiff's section 23300 claims on the merits, they would fail as a matter of law. Section 23300 does not preclude a municipality from establishing rental fees based on a percentage of a business' total gross revenue, even if that revenue includes alcohol sales.[2] Under section 23300, "[n]o person shall exercise the privilege or perform any act which a licensee may exercise or perform under the authority of a license unless the person is authorized to do so by a license issued pursuant to this division." Cal. Bus. & Prof. Code § 23300. California courts have interpreted section 23300 to provide "that no person may perform any act for which a license is required under the Act unless the person is so authorized under a license." *Richards v. Dep't of Alcoholic Beverages Control*, 139 Cal. App. 4th 304, 313 (2006); *see also Quan v. San Francisco Police Dep't*, No. C 10-01835 MEJ, 2012 WL 4477621, at *5 (N.D. Cal. Sept. 27, 2012) (interpreting section 23300 to prohibit the sale of an alcoholic beverage without a license). A license issued by the Department of Alcohol and Beverage Control allows a licensee to manufacture, import and sell alcoholic beverages in the State. Cal. Const. art. XX, § 22. Licensees are authorized to, for example, (a) deliver or receive deliveries of distilled spirits, (b) store, bottle, cut, blend, mix, flavor, color, label, and package distilled spirits, (c) store

---

[2] As previously noted, Plaintiffs' second cause of action is titled "Declaratory and Injunctive Relief," but requests only "a declaration of rights," and "a declaratory judgment." FAC ¶¶ 85-89. Plaintiff argues that Defendants "do not challenge Plaintiff's injunctive relief claim to the extent it is based on section 23300." ECF No. 42 at 20 n. 5. However, there is no such claim in the complaint.

8

and deliver distilled spirits, and (d) sell wine. Cal. Bus. & Prof. Code § 23355.1; *see also id.*§§ 23356 *et seq*. (authorizing beer tasting, wine blending, wine growing, importing and other specific activities). Here, Defendants are not attempting to sell, manufacture, import or otherwise exercise any privilege or perform any act that reserved for those with a license. Thus, Section 23300 does not apply to the revenue-sharing agreement presented by Defendants.

Plaintiffs argue that a recently enacted statute, section 23300.1, provides the "only exception" to section 23300's bar on non-licensees exercising the privileges of licensees, and helps to explain – by implication – why section 23300 bars the revenue-sharing agreement at issue. ECF No. 42 at 14-15. Section 23300.1 provides that "written agreement[s] regarding the sharing or splitting of gross revenue from the sale of alcoholic beverages between a licensee and a district agricultural association . . . . is not the exercise of a license privilege or performance of an act for which a license is required, unless the agreement, or any other related agreement or understanding, results in an unlicensed person exercising control or undue influence over a licensee or the operation of a licensed business." Cal. Bus. & Prof. Code § 23300.1. In other words, the California legislature recently clarified that state fairs are not required to become licensees in order to enter into written agreements to share revenues from alcohol beverage sales by licensees.

Section 23300.1 does not describe revenue-sharing as an exercise of a privilege or performance. Rather, the language of the statute confirms that this kind of agreement is *not* an exercise of a privilege or performance of an act specifically reserved for licensees "*unless* the agreement . . . results in an unlicensed person exercising control or undue influence over a licensee or the operation of a licensed business." Cal. Bus. & Prof. Code § 23300.1 (emphasis added). "Ordinarily, the words of the statute provide the most reliable indication of legislative intent." *People v. Jefferson*, 21 Cal. 4th 86, 94, 980 P.2d 441, 446 (1999) (citation omitted).

To the extent the statute is ambiguous, "a court may consider extrinsic evidence of the legislature's intent," including "the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality." *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal. 4th 776, 772 (1998)). The legislative history of

section 23300.1 also suggests that a revenue-sharing agreement does not violate the statute. That history shows that the statute's author intended to "clarify that the mere existence of revenue-sharing agreements does *not* constitute the exercising of license privileges." ECF No. 41 at 7 (emphasis added).[3] Thus, to the extent the language and legislative history of section 23300.1 can be read to favor either side in this case, they favor the Defendants.

In short, Plaintiff's claims for unjust enrichment and declaratory relief based on Section 23300 fail as a matter of law, and Defendants' motion for judgment on these claims is GRANTED.

### C. Plaintiff's First Amendment Claim for Denial of Access to the Courts Fails

Plaintiff alleges that Defendants have interfered with its right to access the courts protected by the First Amendment Right to Petition by including a liability waiver in the 2016 Landing Agreement, and refusing to allow Plaintiff to use the guest docks at South Beach Harbor until Plaintiff signs the agreement. Defendants argue that Plaintiff cannot bring this claim because (1) to bring a claim based on a coerced waiver, Plaintiff must identify the legal claims that are extinguished by the waiver; and (2) Plaintiff must actually be subject to the waiver. ECF No. 40 at 24. The second of these arguments is persuasive.

Plaintiff's first argument derives from *Christopher v. Harbury*, 536 U.S. 403 (2002). In that case, Jennifer Harbury alleged that "Government officials intentionally deceived her in concealing information that her husband, a foreign dissident, was being detained and tortured in his own country by military officers of his government, who were paid by the Central Intelligence Agency (CIA)." *Id.* at 405. Harbury alleged that this official deception denied her access to the courts "by leaving her without information, or reason to seek information, with which she could

---

[3] The legislative history of section 23300.1 cites to an Attorney General opinion from 1966, which explained that a licensee "may enter into a sublease or concession agreement for the operation of a cardroom on the licensed premises" on the condition that the licensee "retain[] full authority over the sale of alcoholic beverages, enforcement of the laws and Department [of Alcohol Beverage Control] rules relating to the sale of alcoholic beverages, and where no part of the revenue from the sale of such beverages inures to the benefit of the cardroom operator." ECF No. 43 at 22. The legislative history of 23300.1 shows that the Attorney Genereal misunderstood the scope of Section 23300.

have brought a lawsuit that might have saved her husband's life." *Id.* The Supreme Court held that Harbury did not state an actionable claim. One basis for its holding was that Harbury failed to identify an underlying cause of action she would have raised had it not been for the government's deception. *Id.* The Supreme Court explained that the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. "Even in forward-looking . . . actions to remove roadblocks to future litigation, the . . . plaintiff must identify a nonfrivolous, arguable underlying claim." *Id.* This rule is supported by basic notions of due process. "Like any other element of an access claim, the underlying cause of action . . . must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

The present case is distinguishable from *Harbury*. There, the plaintiff failed to identify *any* claim she would have brought had she not been misled. By contrast here, Lil' Man's complaint contains precisely the claims it would bring in the absence of a waiver – because it has actually brought them. As Plaintiff states in its opposition, "the 2016 Landing Agreement . . . means [Plaintiff's] claims in this lawsuit (e.g., the Tonnage Clause, Rivers & Harbors Act, Commerce Clause, and others) are entirely waived." ECF No. 42 at 24. This satisfies the requirement that Plaintiff identify its underlying claim.

Defendants' second argument, that Plaintiff cannot sue because it is not (yet) actually subject to the waiver, is more persuasive. *Avalos v. Baca* is instructive. In that case, plaintiff was "over-detained" by the Los Angeles Sheriff's Department, which should have transferred him to another county upon arrest but instead kept him in custody for two months. *Avalos v. Baca,* 596 F.3d 583, 585-86 (9th Cir. 2010). On the day of plaintiff's release, a sheriff's deputy handed him an agreement to release any potential claims against LASD in exchange for $500, and a few weeks later deputies came to his home with a release and a check in that amount. *Id.* at 586. Although he did not speak English or understand the paperwork, he signed the release and cashed the check. Avalos later sued the LASD and individual deputies, alleging not only claims for over-detention, but also a claim for what he denominated a "coercive in-custody settlement process" in violation of 42 U.S.C.A. § 1983. *Id.* at 589.

11

The district court granted summary judgment in defendants' favor on this claim, and the Ninth Circuit affirmed. The court held, "[b]ecause a coerced waiver does not extinguish a detainee's claim for over-detention or false imprisonment, there is no freestanding constitutional right to be free of a coercive waiver. *Id.* at 590-91 (quotation and citation omitted). When a plaintiff brings a lawsuit for an unconstitutional condition, the defendant may raise a waiver of that right as an affirmative defense, and the plaintiff can then attack the waiver by showing it was coerced or provided involuntarily. *Id.* The existence of the waiver itself – coercive or not – does not provide the basis for a claim. *Id.*

Similarly here, there is no freestanding coercive waiver claim. Plaintiff must actually sign the waiver, then see if Defendants assert it. At that point, Plaintiff can dispute its validity. But Lil' Man may not bring a standalone claim for coercive waiver, because the law does not recognize such a claim. Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings with respect to Plaintiff's access to the courts claim.[4]

## CONCLUSION

For the aforementioned reasons, Defendants' motion for judgment on the pleadings as to Plaintiff's First Amendment, and section 23300 unjust enrichment and declaratory relief claims is GRANTED with prejudice.

The Court sets a further case management conference on November 7, 2018 at 2:00 p.m. An updated joint case management statement is due October 31, 2018.

**IT IS SO ORDERED.**

Dated: September 4, 2018

JON S. TIGAR
United States District Judge

---

[4] In light of this conclusion, the Court need not reach Defendants' two remaining arguments regarding Plaintiff's First Amendment claim.

12