UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIL' MAN IN THE BOAT, INC., <br><br>Plaintiff, <br><br>v. <br><br>CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br>Defendants. | Case No. 17-cv-00904-JST <br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION** <br><br>Re: ECF No. 50 |

In this putative class action, Plaintiff Lil' Man in the Boat, Inc. complains against defendants City and County of San Francisco, San Francisco Port Commission, and four of those entities' employees (collectively "Defendants") about a recently-amended landing agreement to use South Beach Harbor (the "2016 Landing Agreement") Defendants require commercial vessels to sign. Lil' Man complains that the agreement "impose[s] excessive fees and charges and place[s] regulations and restrictions on vessels, with the greatest unjustified imposition on commercial charter vessels engaged in interstate commerce as a condition of landing at the Port," and that "[t]he fees charged by Defendants bear no relationship to the costs generated or to the services provided by Defendants to commercial vessels." ECF No. 33 ¶ 7. Lil' Man contends the agreement is an unlawful infringement of its constitutional rights and asks the Court to declare the agreement unconstitutional and to order Defendants to pay damages and restitution. *Id.* ¶¶ 84, 89.

Now before the Court is Lil' Man's motion to certify two classes of commercial vessel operators: those who were asked to sign the 2016 Landing Agreement, and those who paid fees pursuant to that agreement. ECF No. 50 at 5. The Court will deny the motion.

## I. BACKGROUND

### A. Factual Background

South Beach Harbor is a "full service marina" on the San Francisco Bay. ECF No. 54 at 2. The harbor is located on the Embarcadero between Pier 40 and AT&T Park, and it consists of over 700 slips at which vessels may dock. *Id*. The harbor has two "guest docks" relevant to this litigation, known as the North Dock and the South Dock. *Id*. South Beach Harbor was built by the San Francisco Redevelopment Agency on land leased from the Port of San Francisco, but it has been operated by the Port since 2012. *Id*. The Port treats the harbor as an independent entity. ECF No. 50-1 at 153-54.

In 2016, harbormaster Joe Monroe and his staff asked commercial vessels using South Beach Harbor to sign a new landing agreement. ECF No. 54 at 2. The agreement requires any "Excursion Vessel" landing at the harbor to pay a "fee of $110 per [l]anding," and under certain conditions, to pay a "percentage fee . . . equal to seven percent (7%) of its [g]ross [r]evenues" for the month. ECF No. 50-2 at 51. The 2016 Landing Agreement also requires harbor-users to waive "any and all [c]laims" against the Port, the City, and their agents, including claims for "any injury, loss or damage to any person or property in or about" the harbor. *Id.* at 66.

Lil' Man operates a charter vessel, "Just Dreaming," out of South Beach Harbor. ECF No. 33 ¶ 1. Lil' Man was asked to sign the 2016 Landing Agreement. ECF No. 50-2 at 5. Lil' Man refused and claims that it has since suffered harm to its business because, among other things, it has been unable to make "reservations" at either the North or South Dock in the absence of a signed agreement. *Id*. at 6. Defendants dispute how much impact there has been on Lil' Man's ability to use the docks. *See* ECF No. 54 at 5-20 (photographs of Just Dreaming at the North and South Docks in 2017 and 2018, as well as emails from Lil' Man advertising excursions in 2018).

### B. Procedural Background

In February 2017, Lil' Man initiated this litigation by filing a putative class action complaint in the Northern District of California. ECF No. 1. Its first complaint stated four claims under 42 U.S.C. § 1983: violation of the Tonnage Clause of the United States Constitution by assessing a "Duty of Tonnage"; violation of Lil' Man's First Amendment right to petition by

virtue of the agreement's exculpation provision; and violation of the Dormant Commerce Clause and Rivers and Harbors Act, respectively, based on the same provisions. *Id.* Lil' Man also asserted claims under the Bane Act, Cal. Civ. Code § 52.1; for unjust enrichment; and seeking declaratory and injunctive relief. *Id.*

Defendants moved to dismiss Lil' Man's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 12. This Court dismissed Lil' Man's Bane Act claim but allowed the other causes of action to proceed. ECF No. 29 at 18. Lil' Man then filed an amended complaint. ECF No. 33. Defendants then moved for judgment on the pleadings solely as to Lil' Man's claims for violation of California Business and Professions Code § 23300 and Lil' Man's § 1983 claim based on a denial of its right to petition. ECF No. 40. The Court granted that motion.

The following month, Lil' Man filed its motion for class certification on its remaining claims. ECF No. 50.

## II. JURISDICTION

The Court has jurisdiction over Lil' Man's 42 U.S.C. § 1983 claims under 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Lil' Man's state law claims pursuant to 28 U.S.C. § 1367 because the conduct giving rise to all the claims originates in a "common nucleus of operative facts." *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005).

## III. LEGAL STANDARD

Class certification under Federal Rule of Civil Procedure 23 is a two-step process. First, Lil' Man must show that its proposed class meets the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. 2014) (party seeking class certification "bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule[] 23(a)" are met). "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately

3

protect the interests of the class." Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Second, the party seeking class certification must demonstrate by a preponderance of the evidence that at least one of the bases for certification in Rule 23(b) is met – for instance, the elements of "predominance" and "superiority." *See Lilly*, 308 F.R.D. at 236; Fed. R. Civ. P. 23(b); *see also Wal-Mart*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.").

## IV. ANALYSIS

### A. Plaintiff's Requested Classes

Lil' Man asks the Court to certify two classes. The first is the "Damages Class," consisting of "[a]ll entities that paid a fee for commercial vessel landings" at the North or South Dock between "February 23, 2015" and "the date of class certification." ECF No. 55 at 9. The second is the "Declaratory Relief Class," which includes "[a]ll entities that were asked [to] sign the 2016 Landing Rights Agreement" to make "commercial vessel landings" at the North or South Dock "from February 23, 2015 to the date of class certification." *Id.* at 9-10.

Lil' Man estimates that there are "at least 25 members of the Damages Class,"[1] ECF No. 50 at 17, and "undoubtedly . . . more than 18 members" of the Declaratory Relief Class, ECF No. 55 at 11. Notwithstanding these estimates, the evidence Lil' Man submits with its motion suggests there are fewer than 20 members in each class. *See* ECF No. 50-1 at 118-19 (showing only 9 entities that paid a "gross revenue fee" to the Port pursuant to the 2016 Landing Agreement); *id.* at 183-84 (showing that only 13 entities have signed the agreement).

### B. Numerosity

To be properly certified a class must be "so numerous that joinder of all members is

---

[1] In its reply brief, Lil' Man lowers this estimate to "more than twenty class members." ECF No. 55 at 11.

4

impracticable." Fed. R. Civ. P. 23(a)(1). Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 564 U.S. at 348 (quotation omitted). Rule 23(a)(1) protects the unnamed parties' interests by allowing class certification only when it would be very difficult in practice to join all the affected parties. 1 William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2014) ("*Newberg*").

There is no hard and fast rule for determining whether a class is sufficiently numerous. "The numerosity requirement is not tied to any fixed numerical threshold—it 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)).

> In some instances, courts have certified classes with as few as 16 members. In other cases, however, courts have declined certification on numerosity grounds where putative classes numbered as many as 258.

*Newberg* § 3:12 (citations omitted). Nonetheless, "precedent provides some guidance." *Rannis*, 380 F. App'x at 651. "A class or subclass with more than 40 members raises a presumption of impracticability of joinder." *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quotation and alterations omitted). On the other hand, a class with fewer than 20 does not.[2] *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-CV-00824 JWS, 2015 WL 1292444, at *10 n.104 (D. Ariz. Mar. 23, 2015) (quoting *Newberg* § 3:12); *Whaley v. Pac. Seafood Grp.*, No. 1:10-CV-3057-PA, 2012 WL 13047314, at *5 (D. Or. Jan. 31, 2012).

"Courts considering certification of classes numbering in the gray area between 20 and 40 are guided by a series of impracticality factors beyond numbers alone." *Newberg* § 3:12. "When evaluating numerosity, courts should consider the number of class members, whether their identities are known, the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive relief is sought." *Sandoval v. M1 Auto*

---

[2] The threshold is sometimes identified as "fewer than 21 members." *E.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).

5

*Collisions Ctrs.*, 309 F.R.D. 549, 562 (N.D. Cal. 2015); *see also Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (courts should consider "the geographical diversity of class members," the ability of the class members to "institute separate suits," and "whether injunctive or declaratory relief is sought"). Accordingly, the Court will analyze each of Lil' Man's proposed classes in turn, first looking to its numerical size, then to the aforementioned factors.

### 1. Damages Class

#### a. Class Size

Lil' Man argues that the Damages Class satisfies the numerosity requirement of Rule 23(a)(1) solely by virtue of its size. ECF No. 50 at 17. Lil' Man "estimates that there are at least 25 members of the Damages Class,"[3] though it believes "these numbers are likely higher, as entities continue to make payments to dock at South Beach Harbor." *Id.* Lil' Man relies on *Ontiveros v. Safelite Fulfillment, Inc.*, 2017 WL 6043078, at *6 (C.D. Cal. Oct. 16, 2017), for the idea that "[t]he Ninth Circuit has not offered a precise numerical standard" for class certification. *Id*. Lil' Man then cites *Rannis*, 380 F. App'x at 650, for the proposition that "courts have certified classes with as few as 20 members." *Id*.

The cited authorities do not help Lil' Man establish numerosity. Although *Ontiveros* contains dicta to the effect that there is no precise threshold for numerosity, the classes actually certified in that decision all numbered over 36, and most had more than 100 members. *Ontiveros*, 2017 WL 6043078, at *6. Perhaps for that reason, defendant in that case did not even contest numerosity. *Id.* Similarly, the Ninth Circuit in *Rannis* did not consider whether a class of 20 was suitable for certification in the first instance, but instead held that the district court did not *abuse its discretion* when it refused to *decertify* a class with 20 members where decertification would confuse class members who had already been notified of a settlement award. ECF No. 51 at 16 (citing *Rannis*, 380 F. App'x at 651). A circuit court's affirmation of a district court's refusal to decertify a class under an abuse of discretion standard lends scant support for Lil' Man's arguments that its proposed classes are too large to practicably join. *See Yokoyama v. Midland*

---

[3] *See* note 1, *supra*.

6

*Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010) (noting that "our review of discretionary class certification decisions is deferential"); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997) ("The law gives broad leeway to district courts in making class certification decisions, and their judgments are to be reviewed by the court of appeals only for abuse of discretion.").

Lil' Man correctly argues that courts lacking hard evidence on class size may "make common sense assumptions to support a finding that joinder would be impracticable." ECF No. 55 at 10 (quoting *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004)). But despite Lil' Man's arguments, the Court may not assume its proposed class into existence. Faced with census statistics demonstrating approximately 151,000 potential class members, the *Moeller* court relied on common sense to find that the actual class was sufficiently large to render joinder impracticable. 220 F.R.D. at 608. Here, Lil' Man argues only that its proposed Damages Class exceeds 20 members. ECF No. 55 at 10-11. While it points to discrepancies in Defendant's evidence to the contrary, Lil' Man gives the Court no reason to suspect that its proposed class is significantly larger than Lil' Man estimates it is. *See id.* Nor do "common sense" assumptions help Lil' Man. While common sense might dictate that there would be at least hundreds of thousands of purchasers of a particular breakfast cereal, *Dennis v. Kellogg Co.*, No. 09-CV-1786-IEG WMC, 2013 WL 1883071, at *2 (S.D. Cal. May 3, 2013), or at least hundreds of recipients of an objectionable bulk-mailer, *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006), common sense does not suggest that the number of commercial vessels using South Beach Harbor would be any larger than what is shown in the evidence the parties have submitted.

Because the number of potential class members by itself does not establish impracticability of joinder, the Court turns to the factors courts consider when a class is in the "gray area."

### b. Numerosity Factors

The additional numerosity factors also weigh against certification of the Damages Class. *See* ECF No. 51 at 15-16. For proposed classes that fall "into the gray area between 21 and 40 class members, courts must consider factors other than class size" including: "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members

7

of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114-15 (S.D.N.Y. 1998); *see also Sandoval*, 309 F.R.D. at 562 (employing numerosity analysis from *Ansari*); *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425-26 (N.D. Cal. 2011) (considering *Ansari* factors).

As for judicial economy, there is no reason to expect a "multiplicity of redundant lawsuits." *Ansari*, 179 F.R.D. at 115. None of the other proposed class members have filed suit in the two years since the City debuted the 2016 Licensing Agreement. *See* ECF No. 50 at 13-14; *see also Greko*, 277 F.R.D. at 425 ("[T]here is no evidence that class treatment will promote immediate judicial economy, as . . . no additional suits have been filed."). The lack of geographic diversity also weighs against certification. "[G]eographic dispersion of class members cuts in favor of certification as joinder of all members of a dispersed class is likely less practicable than joinder of all members of a similarly sized class residing in one neighborhood or working in one workplace." *Newberg* § 3:12. Here, by definition, each Damages Class member operates a commercial vessel out of South Beach Harbor. *See* ECF No. 50 at 9. The proposed class members all operate, at least in part, from the same location. *See Sandoval*, 309 F.R.D. at 562 ("[T]he potential class members are not geographically dispersed as they all work in the San Francisco Bay Area. This weighs against certification.").

The third and fourth factors, the financial resources of putative class members and the ability of the members to file individual suits, are often analyzed jointly. *Marshall v. Bonded Adjustment Co.*, No. 11-CV-0022-TOR, 2012 WL 3044246, at *7 (E.D. Wash. July 25, 2012). In evaluating these factors, courts often look at such items as "the economic status of the class members; the size of their claims; and other relevant factors, such as confinement and mental handicaps." 32B Am. Jur. 2d Federal Courts § 1506. Claim size matters because "[i]ndividual claims of certain class members may be too small to warrant individual actions." *Id.* Similarly, poor or disabled class members may "not have the economic means to pursue remedies on an individual basis." *Id.* Such considerations are not present here. Despite Lil' Man's argument that its putative class members lack the resources to bring suit, ECF No. 50 at 24-25, all of the

8

United States District Court
Northern District of California

Damages Class members are commercial entities with the wherewithal to operate charter vessels. *See id.* at 9 (the class includes "[a]ll entities that paid a fee for commercial vessel landings"); ECF No. 50-1 at 118 (interrogatory response listing 9 commercial entities who paid a gross revenue fee pursuant to the 2016 Landing Agreement). More importantly, class members' claims are large enough that they have an incentive to bring them individually. For instance, Commodore Dining paid more than $160,000 in fees during the class period. ECF No. 53 at 3. This is not a case where a class action is necessary because "only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

Finally, Lil' Man is not seeking prospective relief for its *Damages* Class. Thus, there is no risk of including "future [class members] who have not yet been identified." *See Greko*, 277 F.R.D. at 426. This factor also cuts against certification.

Lil' Man suggests that class members will not sue individually because of fear the City will retaliate. ECF No. 50 at 20; *see also* ECF No. 50-2 at 8. According to Lil' Man, the class members cannot be expected to sue under their own names since they are "too fearful to even submit declarations in support of this lawsuit." ECF No. 55 at 12. The only evidentiary support for this is the hearsay declaration of Lawrence Murray, the president of Plaintiff Lil' Man in the Boat. ECF No. 50-2.[4] These hearsay statements are insufficient to establish a likelihood of retaliation. Moreover, even if they did, the Court would not find that this fear alone outweighed the factors just discussed.

Because neither the class size nor the numerosity factors favor certifying Lil' Man's Damages Class, Lil' Man's motion for certification of the Damages Class is DENIED.

### 2. Declaratory Relief Class

Lil' Man's Declaratory Relief class will not be certified for largely the same reasons the Court declined to certify the Damages Class. As an initial matter, Lil' Man only claims 18 members for this class, ECF No. 50 at 17, and provides no argument beyond that supporting its Damages Class as to why this class would satisfy the numerosity requirement. *Id.* Fewer than 20

---

[4] Defendants object to Murray's written testimony regarding the statements of other vessel operators as hearsay. ECF No. 51 at 10. The Court sustains the objection.

9

proposed class members is generally too small a number to show impracticability of joinder. *See Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 890 (N.D. Cal. 2015). And even if this class were in a "gray area," the numerosity factors described above counsel against finding the numerosity criterion satisfied. All the members operate out of the same port. ECF No. 50 at 9. Every member seems to have adequate resources and financial incentive to bring its own suit. *See* ECF No. 53 at 3. And because Lil' Man seeks to include only entities that were asked to sign the landing agreement up to "the date of class certification," ECF No. 50 at 14, it is "not seeking relief for unspecified future class members," *Sandoval*, 309 F.R.D. at 562. Thus, this factor also weighs against certification. Accordingly, Lil' Man's motion to certify the Declaratory Relief Class is DENIED.

### C. Evidentiary Objections

Defendants object to portions of the declarations and exhibits submitted by Lil' Man in support of its motion for class certification. ECF No. 51 at 10-12. The Court did not consider most of the objected-to evidence but makes the following rulings on evidence it did consider.

Defendants object to Exhibits D, E, and F of the declaration of David Ongaro (ECF No. 50-1) on the basis of relevance. ECF No. 51 at 12. The Court finds these exhibits relevant to the issue of class certification and admits them.

Defendants also object to the declaration of Lawrence Murray (ECF No. 50-2). In addition to the hearsay objection the Court already sustained, *see* note 4, *supra*, Defendants claim that Murray's statements were not based on personal knowledge and that certain facts referenced in his declaration were not disclosed in discovery. ECF No. 51 at 10-11. The Court has relied only on Murray's descriptions of his own activities, which inarguably rest on personal knowledge and are admissible on that basis. Otherwise the Court cannot address Defendants' objection because Defendants have not identified *which* facts they find objectionable for lack of prior disclosure.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Because neither of Lil' Man's proposed classes is sufficiently numerous to satisfy Rule 23(a)(1), the motion for class certification is DENIED.

**IT IS SO ORDERED.**

Dated: January 8, 2019

JON S. TIGAR
United States District Judge